UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH COTTENHAM,

      Petitioner,                 Case Number 2:19-CV-10690
                                     HONORABLE SEAN F. COX
v.                           UNITED STATES DISTRICT JUDGE

NOAH NAGY,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Ralph Cottenham, ("Petitioner"), confined at the Cotton Correctional Facility in Jackson, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for second-degree murder, M.C.L.A. 750.317.  For the reasons that follow, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

### I. Background

      Petitioner was originally charged with open murder. [1]  Petitioner was convicted following a jury trial in the Saginaw County Circuit Court of the lesser included offense of second-degree murder.  This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g., Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

      Defendant's conviction arose from the April 28, 2016 killing of his stepdaughter, Amber Morris.  Amber's sister, Holly Morris, testified that she and Amber

---

[1] Under Michigan law, it is proper to charge a defendant with the crime of open murder. Such a charge gives a circuit court jurisdiction to try a defendant on first and second-degree murder charges. See *Taylor v. Withrow*, 288 F.3d 846, 849 (6th Cir. 2002); *see also Williams v. Jones*, 231 F.Supp.2d 586, 589 (E.D. Mich. 2002)(citing M.C.L.A. 750.316, 750.318; *People v. McKinney*, 65 Mich.App. 131, 135, 237 N.W.2d 215, 218 (1975)).

remained friends with defendant after their mother died in October 2014. Holly testified that Amber and defendant worked together and that defendant would give Amber prescription drugs. Brandon Thomas, Amber's fiancé, agreed that Amber used prescription drugs such as tramadol, that she was addicted to prescription drugs, and that defendant would give her money and prescription drugs. Thomas stated that defendant wanted Amber "to come around all the time" and would "bribe" her with money to spend time with him.

The prosecution's primary witness was Cody Sweet, defendant's son. Sweet had been estranged from defendant for most of his life, but began living with defendant in January 2016, having met him only once before. Sweet testified that defendant wanted a "sexual relationship" with Amber. Similarly, Holly described an incident, "about 45 days before [her] sister died," in which defendant "was texting [Amber], asking me, is this enough money to ask her for oral sex?" Holly testified that she once took defendant's phone away from him because he was excessively texting Amber. Holly also recalled a time when defendant was upset with Amber and said, "I'll kill that b* * *h." Holly said that defendant apologized the next day and blamed the statement on being drunk. At trial, Sergeant Matthew Gerow of the Saginaw Police Department recited a series of text messages between defendant and Amber that began on March 29, 2016. In those messages, defendant offered Amber money in exchange for sexual favors and told her that their relationship would end if she declined. In her responses, Amber adamantly and repeatedly declined the offers.

On the afternoon of April 28, 2016, Sweet returned home from work and found Amber and defendant drinking alcohol in the living room. Sweet took a nap until the evening; when he awoke, Sweet observed that Amber and defendant were arguing, which he testified was not unusual. Sweet said that after Amber left the home, defendant called 9–1–1 in an attempt "to get her arrested for a DUI." According to Sweet, defendant said he was "tired" of "the way she was treating him." Later that evening, defendant told Sweet that Amber would be returning to the house that night. Sweet testified that defendant said he was "going to kill her," but Sweet assumed that he was joking. When Amber returned, she and defendant conversed in the living room while Sweet was in his bedroom. Sweet heard defendant tell Amber that "he had to show her something in the basement." Sweet said that after defendant and Amber went to the basement, he heard "a little bit of argument, commotion." Specifically, Sweet thought that Amber might have said "help," but he stated that he "didn't want to get involved." The noise ceased, and about 10 minutes later defendant entered Sweet's bedroom and told him that he had killed Amber. Sweet rushed downstairs and observed Amber lying face-down on the floor. Sweet said that defendant proceeded to "kick" and "stomp" on Amber to prove that she was deceased. Defendant then pulled Amber's pants and underwear down and digitally penetrated her. Sweet asked defendant to stop; he did so after "30 seconds to a minute." Sweet also testified that he observed a

"ratchet strap" wrapped around Amber's neck; he stated that defendant told him that he had "tried knocking her out" but then used the strap to "choke her." Sweet then helped defendant move Amber's body to the trunk of her vehicle. Sweet said that he helped defendant out of fear for his life. Defendant then proceeded to clean up the basement with towels and bleach. Defendant instructed Sweet to meet him at a bar and then left in Amber's vehicle. Sweet picked defendant up from that location, leaving Amber's vehicle there.

The police found Amber's body in the trunk of the vehicle the next day. Within a couple of days, defendant invited Holly to his house. Holly thought it was unusual that they were "chilling" outside on the patio because they usually "hang out in the house." When Holly later entered defendant's bathroom, she observed a strong odor of bleach. She also noticed that the basement windows were open, which also was unusual. She testified that at one point defendant asked her, "[Y]ou don't think I did anything to your sister, do you?"

Dr. Kanu Virani performed Amber's autopsy. He testified that toxicology testing revealed that alcohol and tramadol were in her system when she died, and opined that the cause of death was "a combination of drug intoxication and asphyxia." Dr. Virani could not say whether asphyxiation or drug intoxication was the sole cause of death. Dr. Virani said that the level of tramadol in Amber's system was "in a toxic range," but explained that there is not a "defined overdose" for the drug because a person can develop a tolerance to it. Dr. Virani said that there was "faint bruising" on Amber's face and both sides of her neck. He opined that the markings on Amber's neck were inconsistent "with any string or belt" [2] and indicated that they were consistent with a human hand. Dr. Virani concluded that the manner of Amber's death was a homicide because of "asphyxia and the bruising on the face and the neck."

Sweet testified that he stopped residing at defendant's home within a few days after defendant killed Amber. Through his attorney, Sweet contacted Sergeant Gerow and disclosed defendant's crime. Sweet was granted immunity from prosecution, and defendant was charged with open murder. The prosecution's theory was that defendant had strangled Amber with his hands and then used the ratchet strap "just to make sure he finished the job ...." Defendant's theory of the case was that Sweet had killed Amber out of jealousy for defendant's attention.

*People v. Cottenham*, No. 338449, 2018 WL 2223357, at *1–2 (Mich. Ct. App. May 15, 2018).

---

[2] Dr. Virani testified that a rope or strap placed around Amber's neck after her death would not have left a mark. (Footnote original).

Petitioner's conviction was affirmed. *Id., lv. den.* 503 Mich. 915, 919 N.W. 2d 776 (2018).Petitioner filed a petition for writ of habeas corpus, which was held in abeyance so that petitioner could return to the state courts to exhaust additional claims.   The Court administratively closed the case.

Petitioner filed a post-conviction motion for relief from judgment, which the trial judge denied. *People v. Cottenham,* No. 16-0042662-FC-5 (Saginaw Cty.Cir.Ct. Apr. 22, 2020).  The Michigan Court of Appeals denied petitioner leave to appeal. *People v. Cottenham,* No. 354044 (Mich.Ct.App. Oct. 9, 2020).  Petitioner's application for leave to appeal was rejected by the Michigan Supreme Court because it was filed after the 56 day period for filing such an application.  (ECF No. 20-7, PageID. 874).

The Court has reopened the case and permitted petitioner to file an amended petition.  In his original and amended petitions, petitioner seeks habeas relief on the following grounds:

I. Was [there] insufficient evidence to prove that Mr. Cottenham caused the death where the evidence showed toxic levels of tramadol and a "superdrunk" blood alcohol content.

II. Mr. Cottenham's right to present a defense was violated when the trial court would not allow questioning of Mr. Cottenham's accuser to show bias and/or motive in his story.

III. Was Mr. Cottenham denied his state and federal constitutional rights to due process, to present a defense, and a properly instructed jury where the trial court committed reversible error in failing to instruct the jury that it should view with caution the testimony of Mr. Sweet, who was at the very least a disputed accomplice.

IV. Defendant was denied the effective assistance of counsel when defense counsel failed to raise defendant's mental capacity before trial jury.

V. The cumulative errors that have occurred require reversal of conviction.

VI. The trial court abused its discretion when the defendant was denied due process and equal protection of the law where defendant was not allowed to raise

an "alibi" defense or show duress. Defendant was denied ineffective assistance of trial counsel and appellate counsel.

VII. This sentence amounts to cruel and unusual punishment. It's 60 to 90 years is another way of an illegal death penalty, defendant would be 111 years old at his minimum release date, defendant can be sentenced at low end of guidelines 18–19 years as offense variables are wrong, sentence is disproportionate resentencing requested.

VIII. Defense counsel was ineffective for failing to obtain an order for competency evaluation for the petitioner.

IX. Defense counsel was ineffective for failing to present petitioner's alibi defense at trial.

X. The sixty to ninety years sentence is cruel and unusual punishment and/or disproportionate.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.  Discussion

**A.  Claims # 2, 6-10.  Petitioner's procedurally defaulted claims.**

Respondent claims that several of petitioner's claims are procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in

the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Respondent argues that petitioner abandoned his second claim alleging that he was denied the right to present a defense by abandoning it on appeal.

The Michigan Court of Appeals rejected petitioner's second claim, finding it to be abandoned for appellate review because petitioner failed to cite any relevant legal authority to support his claim. *People v. Cottenham*, 2018 WL 2223357, at * 4.

Under Michigan law, "[A]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v. Matuszak*, 263 Mich. App. 42, 59, 687 N.W.2d 342, 353 (2004)(*quoting People v. Watson*, 245 Mich.App. 572, 587, 629 N.W.2d 411 (2001).  Such cursory treatment constitutes abandonment of the issue. *Id.* Under Michigan law, a party who fails to develop any argument or cite any authority in support of his or her claim waives appellate review of the issue. *People v. Griffin*, 235 Mich. App. 27, 45, 597 N.W.2d 176 (1999).

A state court conclusion that an issue was waived is considered a procedural default. *See e.g. Shahideh v. McKee*, 488 F. App'x. 963, 965 (6th Cir. 2012).

Petitioner waived appellate review of his second claim by failing to offer relevant legal authority for the issue in his appellate brief; Petitioner procedurally defaulted the claim.

Respondent argues that petitioner's eighth, ninth, and tenth claims, which he raised on his post-conviction motion for relief from judgment are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3). The Court notes that petitioner's sixth claim is basically the same as his ninth claim and his seventh claim is essentially the same as his tenth claim, so respondent's procedural default argument would apply to these claims as well.

The Michigan Supreme Court rejected petitioner's post-conviction appeal for being untimely. The Michigan Court of Appeals denied petitioner's post-conviction appeal in a form order "because the defendant failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Cottenham,* No. 354044 (Mich.Ct.App. Oct. 9, 2020)(ECF No. 20-7, PageID. 811). These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. Because the form orders in this case are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The Saginaw County Circuit Court judge, in rejecting petitioner's claim alleging that trial counsel was ineffective for failing to present an alibi defense and his disproportionate sentencing claim, concluded that petitioner failed to show cause and prejudice, as required by M.C.R.

6.508(D)(3), for failing to raise these issues on direct appeal. (ECF No. 20-6, PageID. 806-07). Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's sixth, seventh, ninth, and tenth claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007). [3]

With respect to petitioner's eighth claim alleging that trial counsel was ineffective for failing to challenge petitioner's mental competency, the trial court indicated that it was denying petitioner's claim pursuant to M.C.R. 6.508(D)(2), because the claim had already been raised on petitioner's direct appeal. (ECF No. 20-6, PageID. 806).

M.C.R. 6.508(D)(2) indicates that a court in Michigan should not grant post-conviction relief if the post-conviction motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision[;]" 6.508(D)(2) is a rule of *res judicata* which bars a defendant from re-litigating claims in a post-conviction motion which have already been adversely decided against him or her. Thus, the state courts' reliance on M.C.R. 6.508(D) based on *res judicata* does not bar habeas review of petitioner's eighth claim, which is really just a reiteration of his fourth claim, which he did raise on his direct appeal. *See Hicks v. Straub,* 377 F. 3d 538, 558, n. 17 (6th Cir. 2004). Accordingly, the Court finds that the procedural default rule contained in 6.508(D)(3) applies only with respect to petitioner's sixth, seventh, ninth, and tenth claims.

---

[3] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim that he asserts in his sixth claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette,* 624 F. 3d at 291. However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

Petitioner has offered no reasons for abandoning his second claim on his appeal of right. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Petitioner raised several ineffective assistance of counsel claims on his direct appeal and in his post-conviction motion, but did not raise a claim that appellate counsel was ineffective for failing to properly brief his second claim on his appeal of right. Because petitioner never raised in the Michigan courts a specific claim about appellate counsel's failure to cite to any relevant legal authority in support of his second claim, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to this claim. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his second claims. *Smith*, 477 U.S. at 533.

With respect to his post-conviction claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in

10

a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [4] claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that petitioner raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a twenty-six page appellate brief which raised three claims, which are basically the first three claims raised by petitioner in his original petition.[5] Petitioner has not shown that appellate

---

[4] *Strickland v Washington,* 466 U.S. 668 (1984).
[5]*See* Brief on Appeal, ECF No. 9-11, PageID 480-511.

counsel's strategy in presenting these three claims and not raising other claims was deficient or unreasonable.   Moreover, for the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners."   Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner.   "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010).

More importantly, this Court notes that in addition to the appellate brief filed by appellate counsel, petitioner filed a supplemental Standard 4 *pro per* brief on his appeal of right before the Michigan Court of Appeals. [6]   Although petitioner raised several claims, he did not present any of the issues that he would subsequently raise for the first time on his post-conviction motion for relief from judgment.   Petitioner took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include what make up his sixth, seventh, ninth, or tenth claims in his supplemental brief.

Petitioner has offered this Court no explanation why he failed to raise these claims in his supplemental *pro per* brief that he filed as part of his direct appeal.   Because petitioner has

---

[6]  *See* Defendant-Appellant's Standard 4 Brief on Appeal, ECF 9-11, PageID. 556-66. Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

offered no reasons for his failure to include these claims in his supplemental *pro per* brief on his direct appeal, he has failed to establish cause to excuse the default of these claims. *See Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008)(habeas petitioner did not show any cause for his failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time); *See also Sheffield v. Burt*, 731 F. App'x. 438, 442 (6th Cir. 2018)(petitioner failed to show cause under M.C.R. 6.508(D)(3) for failing to raise issues on direct appeal; "And as the Michigan trial court and the government note, Sheffield had the opportunity to raise any issues in his Standard 4 brief on direct appeal that he felt his appellate counsel should have raised. He did not raise the issue").

In the present case, petitioner has failed to show cause to excuse his default. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his defaulted claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim (Claim # 1) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

The Court recognizes that petitioner in his sixth and ninth claims alleges that trial counsel was ineffective for failing to raise an alibi defense. Petitioner's proposed alibi is insufficient to invoke an innocence exception that would excuse the defaults here for two reasons.

13

First, with the exception of petitioner's sister, petitioner never presented any affidavits of the other alibi witnesses to either the state courts on post-conviction review or to this Court. Petitioner would be unable to use these purported alibi witnesses to support his claim of actual innocence, because he has offered no affidavits from these witnesses which would establish what their proposed testimony would be and whether they would be willing to testify on his behalf. *See e.g. Townsend v. Lafler,* 99 F. App'x. 606, 610 (6th Cir. 2004).

Petitioner did present to the state courts an affidavit from his sister, Susan K. Cottenham, dated April 20, 2019. (ECF No. 20-7, PageID. 911-13). Susan claims in her affidavit that petitioner was with her from approximately 9:50 p.m. on April 28, 2016, until the morning of April 29, 2016. In her affidavit, Susan claims that she went to petitioner's house at approximately 9:50 p.m. on April 28, 2016, in order to bring petitioner back to her apartment so that he could clean it for her the next morning. Susan alleges that the victim was also at petitioner's home at the time, but she did not go with petitioner and Susan because she was planning to attend a party that evening. Susan claims that she and petitioner left his home in her vehicle and drove to her apartment at approximately 10:00 p.m. When they arrived at Susan's apartment, petitioner and Susan fell asleep, and petitioner allegedly cleaned the apartment the next morning. Susan alleges that petitioner "never left my apartment or my presence." In her affidavit, Susan admits to testifying at petitioner's trial but alleges that trial counsel informed her before her trial testimony that the Court was only going to allow him to ask her a few questions, and that she should "just answer the few questions presented." Susan's affidavit further states that she would have testified as to the facts outlined in her affidavit if Defendant's trial attorney "would have allowed me to."

Susan Cottenham's affidavit is suspect because she is petitioner's sister. Affidavits from family members that are created after trial are not sufficiently reliable evidence to support a finding of actual innocence. *See Milton v. Secretary, Dep't Of Corr.,* 347 F. App'x. 528, 531-32 (11th Cir. 2009). Neither Ms. Cottenham nor Petitioner explain why it took his sister some three years after the crime, and two years after petitioner's trial, in which Ms. Cottenham testified, to provide an affidavit in support of an alibi defense. Petitioner does not explain why he did not raise this claim or present his sister's affidavit in the *pro per* Standard 4 Brief on Appeal that he raised in his appeal of right. Because Ms. Cottenham's credibility is suspect, her affidavit is insufficient to establish petitioner's actual innocence, to excuse the default. *See Freeman v. Trombley,* 483 F. App'x. 51, 60 (6th Cir. 2012)(affidavit of petitioner's former girlfriend who provided alibi, signed 15 years after petitioner had been convicted of first degree murder, did not provide kind of extraordinary showing that was required to establish petitioner's factual innocence, to support equitable tolling of statute of limitations). Finally, Ms. Cottenham acknowledges going to sleep once she and petitioner got to her apartment. Because there was a window of opportunity for petitioner to have committed the murder while his sister slept, his purported alibi witness is insufficiently reliable evidence to establish petitioner's actual innocence, so as to excuse his default. *See e.g., Turner v. Romanowski*, 409 F. App'x. 922, 929-30 (6th Cir. 2011); *see also Reeves v. Fortner*, 490 F. App'x. 766, 769–70 (6th Cir. 2012)(alibi witnesses' proposed testimony did not establish petitioner's actual innocence to excuse default, when proposed testimony did not preclude the petitioner from committing the crime). Because petitioner has not presented any new reliable evidence that he is innocent of the crimes underlying his convictions, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims.

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).   For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's second claim on his appeal of right, the Saginaw County Circuit Court in rejecting petitioner's post-conviction claims on his post-conviction motion, and by the Assistant Michigan Attorney General in the answers to the original and amended petitions for writ of habeas corpus, petitioner failed to show that his procedurally defaulted claims have any merit.  Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

### B.  Claim # 1.  The sufficiency of evidence claim.

Petitioner claims that there was insufficient evidence to sustain his murder conviction.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(*quoting Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence" supported the verdict).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656

(2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Petitioner's primary argument is that there was insufficient evidence presented that he was the cause of the victim's death, so as to sustain his conviction for second-degree murder.

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger,* 595 F. 3d 647, 654 (6th Cir. 2010)(*citing People v. Goecke*, 457 Mich. 442 463-64, 579 N.W.2d 868 (1998)). "[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (*citing People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980)).

Petitioner initially argues that the prosecutor failed to corroborate his theory that petitioner strangled the victim with a ratchet strap. The Michigan Court of Appeals rejected this argument:

> Defendant asserts that the prosecution's theory was that defendant strangled Amber with a ratchet strap, which was not corroborated by the medical examiner's testimony. Defendant misstates the prosecution's theory of the case. The prosecution argued that defendant strangled Amber with his hands and then used the strap to ensure that he had killed her. The medical examiner explained that a person does not bruise after death. Further, Sweet merely testified that

18

defendant had told him that he used the strap to choke Amber; Sweet did not observe that act and the prosecution did not rely on that portion of his testimony or even assert that Amber had been choked with a strap. In any event, "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." Therefore, the evidence was not inconsistent with the prosecution's theory, as defendant suggests.

*People v. Cottenham*, 2018 WL 2223357, at * 3 (internal citation omitted).

A prosecutor need not prove with absolute certainty in a second-degree murder prosecution that a particular incident caused the victim's death; a medical likelihood suffices. *See People v. Stiller*, 242 Mich. App. 38, 52, 617 N.W.2d 697 (2000). Dr. Virani concluded that the manner of the victim's death was a homicide because of "asphyxia and the bruising on the face and the neck." The medical examiner testified that a person does not bruise after death, which would account for why no markings from the ratchet strap were found on the victim's neck after petitioner choked her with his hands. The evidence in this case was sufficient to establish that the victim died from asphyxiation. Dr. Viriani's testimony, if believed, would be sufficient to establish the cause of the victim's death so as to defeat petitioner's sufficiency of evidence claim. *See Harding v. Bock,* 107 F. App'x. 471, 477 (6th Cir. 2004).

Petitioner also argues that he could not be convicted of second-degree murder because his act of choking the victim was not the sole cause of her death, because the medical examiner testified that the victim had a large amount of drugs and alcohol in her body and therefore could not say that petitioner's act of choking the victim was the sole cause of her death.

The Michigan Court of Appeals rejected this claim:

Contrary to defendant's assertion, there was also sufficient evidence presented to the jury to establish that defendant's act of strangling Amber was a cause of her death. Dr. Virani did testify that the cause of death was a combination of asphyxia and drug intoxication, and that he could not declare that either factor was the sole cause of death. But "[i]n assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only

that he be a contributory cause that was a substantial factor in producing the harm." *People v. Bailey*, 451 Mich. 657, 676; 549N.W.2d 325 (1996). Defendant's act of strangling Amber was clearly a "substantial factor" in Amber's death, given that Dr. Virani classified the death as a homicide because she was asphyxiated and had bruising on her face and neck. Defendant suggests that the asphyxiation could have been caused by a tramadol overdose; however, no evidence was presented to the jury on that subject. Regardless, Dr. Virani's reference to asphyxia and bruising in explaining that Amber's death was a homicide supports the conclusion that her asphyxiation was caused by a violent human act.

*People v. Cottenham*, 2018 WL 2223357, at * 3 (internal footnote omitted).

To warrant a conviction of homicide, death must be the natural and probable consequence of the unlawful act and not the result of an independent intervening cause in which the accused did not participate and which he could not foresee. *People v. Clark*, 171 Mich. App. 656, 659, 431 N. W. 2d 88 (1988). Causation in criminal cases is a question of fact for the jury. *Id.* The prosecution does not need to prove that the defendant's conduct was "the" proximate cause of death, but only "a" proximate cause of death. *People v. Tims*, 449 Mich. 83, 95-96; 534 N. W. 2d 675 (1995). A decedent's intervening act will break an established chain of causation only if it constitutes the sole cause of death. *People v. Bailey*, 451 Mich. 657, 677; 549 N. W. 2d 325 (1996). The prosecution can prove the element of proximate cause beyond a reasonable doubt where non-fatal wounds "cause death indirectly through a chain of natural effects and causes unchanged by human action." *People v. Thomas*, 85 Mich. App. 618, 627; 270 N. W. 2d 665 (1978).

The Michigan Court of Appeals reasonably rejected petitioner's sufficiency of evidence claim. Petitioner's act of strangling the victim was a substantial cause of her death, even if it was not the sole cause of her death. Because Michigan law requires that a defendant's conduct only be "a" cause of the victim's death, and not the sole cause, the Michigan Court of Appeals

reasonably applied Michigan's law of causation, to wit, that there was sufficient evidence for a rational trier of fact to have found that petitioner's act of choking the victim was a substantial cause of her death, because "joint mutual causes do not excuse culpable behavior." *Danielak v. Brewer*, 747 F. App'x. 339, 345 (6th Cir. 2018). Petitioner is not entitled to habeas relief on his first claim.

### C.  Claim # 3.  The jury instruction claim.

Petitioner next claims that the trial court erred in failing to *sua sponte* give the jurors a cautionary instruction that they should examine Mr. Sweet's testimony more carefully because he was an accomplice to the crime.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.   The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977). The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Cupp v. Naughton*, 414 U.S. 141 (1973).  A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Terry v. Bock,* 208 F. Supp. 2d 780, 793 (E.D. Mich. 2002).

The Sixth Circuit has held, even on direct appeals from federal criminal trials, that a trial court's failure to give a special cautionary instruction on accomplice testimony is not reversible

error, so long as the court has given the jury a general instruction on witness credibility and the various considerations that it should take into account in weighing the testimony of various witnesses. *See United States v. Carr*, 5 F. 3d 986, 992 (6th Cir. 1993); *see also United States v. Bucheit,* 134 F. App'x. 842, 859 (6th Cir. 2005)(failure to give accomplice instruction not reversible error); *United States v. Allgood*, 45 F. App'x. 407, 412 (6th Cir. 2002)("While it is the preferred practice to give a cautionary instruction regarding the possible unreliability of accomplice testimony, we have not held that such an instruction is required for a jury to be 'properly cautioned.'"); *Scott v. Mitchell,* 209 F. 3d 854, 883 (6th Cir. 2000)("We have since followed *Carr* in not requiring accomplice instructions as a general matter").

Federal habeas review of jury instruction claims arising out of a state court prosecution is even more deferential than direct review by a federal appellate court of a federal criminal conviction.  In this case, the state trial court's refusal to specifically instruct the jury regarding the credibility of accomplice witnesses did not violate petitioner's right to due process, in light of the fact that the general instructions on witness credibility alerted the jury to the various considerations that it should take into account in weighing testimony, giving the jury an ample basis for rejecting the testimony of Mr. Sweet if it had chosen to do so. (ECF No. 9-8, PageID. 389-92). *See Latimer v. Burt,* 98 F. App'x. 427, 432-33 (6th Cir. 2004).  The judge also instructed the jurors to consider the fact that Mr. Sweet had been offered immunity to testify against petitioner. (ECF No. 9-8, PageID. 391).  In light of the evidence presented at trial, the jury had sufficient evidence to assess Sweet's credibility and his possible motivations for lying. Therefore, the trial court's failure to instruct the jury more specifically on the testimony of accomplices did not deprive petitioner of a fair trial or due process of law. *See Grant v. Rivers,* 920 F. Supp. 769, 784 (E.D. Mich. 1996).

### D.  Claim # 4 and # 8. The ineffective assistance of counsel claims.

Petitioner in his fourth and eighth claims alleges that trial counsel was ineffective for failing to challenge petitioner's mental competency to stand trial.   The Michigan Court of Appeals rejected this claim on the appeal of right:

> Defendant asserts that he told his counsel that he suffered from schizophrenia and that his counsel should have then requested forensic testing to determine his competency. But the record does not reveal what defendant told his counsel regarding his mental illnesses or what investigatory efforts defense counsel made. Therefore, defendant has failed to establish the factual predicate for this alleged error. But even assuming that defendant told counsel that he was suffering from schizophrenia, a schizophrenia diagnosis, by itself, is not evidence that defendant was incompetent within the meaning of MCL 330.2020(1); rather, "[t]he issue of competence can only be raised by evidence of incompetence." We note that defendant's presentence investigation report indicates that "[t]he defendant has been off his medication since being incarcerated in the Saginaw County Jail." But there is no indication in the record that defendant was mentally incompetent at any time during the proceedings. On numerous occasions, defendant interacted with the trial court on the record in a clear and cogent fashion, and there is nothing to suggest that he was "incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1) Therefore, it cannot be said that defense counsel was ineffective for failing to raise the issue.

*People v. Cottenham*, 2018 WL 2223357, at * 7 (internal citations omitted).

A defendant may not be put to trial unless he or she has a sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him or her. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Dusky v. United States*, 362 U.S. 402, 402 (1960).  The competency standard for pleading guilty is the same as the competency for standing trial and is not a higher standard. *Godinez v. Moran*, 509 U.S. 389, 398 (1993).

A habeas petitioner's mental competency claims "can raise issues of both substantive and procedural due process." *Hastings v. Yukins*, 194 F. Supp. 2d 659, 670 (E.D. Mich. 2002).  A

habeas petitioner may make a procedural competency claim by alleging that the state trial court failed to conduct a competency hearing after the petitioner's mental competency was put in issue. However, to succeed on the procedural claim, a habeas petitioner must establish that the state trial judge ignored facts which raised a "*bona fide* doubt" regarding petitioner's competency to stand trial. *Walker v. Attorney General for the State of Oklahoma*, 167 F. 3d 1339, 1343 (10th Cir. 1999)(internal citations omitted); *Hastings,* 194 F. Supp. 2d at 670.

Evidence of a defendant's irrational behavior, his or her demeanor at trial or at another court proceeding, and any prior medical opinions on competence to stand trial are all relevant in determining whether further inquiry by a trial court on a defendant's mental state is required, but even one of these factors standing alone, may in some circumstances, be sufficient to trigger a further inquiry into a defendant's mental fitness to stand trial. *Drope v. Missouri*, 420 U.S. 162, 180 (1975). However, there are no fixed or immutable signs which invariably indicate the need for a further inquiry to determine the fitness to proceed. *Id.* There must be some manifestation or conduct on a habeas petitioner's part "to trigger a reasonable doubt as to his or her competency." *Hastings v. Yukins,* 194 F. Supp. 2d at 671. A trial judge is allowed to rely on his or her own observations of the defendant's comportment or demeanor to determine whether that defendant is competent to stand trial. *Id.* (*citing to Bryson v. Ward*, 187 F. 3d 1193, 1201 (10th Cir. 1999)).

A full competency hearing is necessary only when a court has a reason to doubt a defendant's competency to stand trial or to plead guilty. *Godinez v. Moran*, 509 U.S. at 401, n. 13. "The due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence of a defendant's incompetency." *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012). The question for a reviewing court is

"[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Mackey v. Dutton*, 217 F.3d 399, 413-14 (6th Cir. 2000)(*quoting Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983)(additional quotation omitted).

"A state-court determination of competence is a factual finding, to which deference must be paid." *Franklin*, 695 F. 3d at 447 (*citing Thompson v. Keohane*, 516 U.S. 99, 108–11 (1995)). The petitioner has the burden of rebutting the presumption of correctness of the state court's determination of his or her competency by clear and convincing evidence. *Doughty v. Grayson*, 397 F. Supp. 2d 867, 876 (E.D. Mich. 2005).  Moreover, regardless of whether a federal habeas court would reach a different conclusion regarding a habeas petitioner's competence to stand trial were it reviewing the case *de novo*, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary, and this deference must be paid even to state-court factual findings made on appeal. *Franklin*, 695 F. 3d at 447.

Petitioner's procedural competency claim fails because there is no evidence in the record which should have raised a *bona fide* doubt with the trial court as to petitioner's competency to stand trial.  Petitioner is not entitled to relief because he failed to show that the state court's belief that petitioner was competent to stand trial was an unreasonable determination of the facts. *See Franklin*, 695 F.3d at 449.

A habeas petitioner can also raise a substantive competency claim by alleging that he or she was tried and convicted while mentally incompetent.  However, a habeas petitioner raising a substantive claim of incompetency is not entitled to a presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence. *Walker v. Attorney General for the State of Oklahoma*, 167 F. 3d at 1344; *Hastings v. Yukins,* 194 F. Supp. 2d at

671.   To obtain habeas relief on a substantive incompetence claim, a habeas petitioner must present evidence which is sufficient "to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to his mental capacity" to stand trial. *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002)(internal quotations omitted).   A habeas petitioner is entitled to an evidentiary hearing on the issue of his or her competency to stand trial "if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court." *Id.*   However, "[A]lthough retrospective determinations of competency are not prohibited, they are disfavored, and the Court will give considerable weight to the lack of contemporaneous evidence of petitioner's incompetence." *Thirkield,* 199 F. Supp. 2d at 653.

The only evidence that petitioner offers to support his claim that he was incompetent to stand trial was that he was suffering from schizophrenia, anxiety, depression, and has been prescribed medications for those conditions.   Neither low intelligence, mental deficiency, nor the fact that a defendant has been treated with anti-psychotic drugs can automatically be equated with incompetence. *See Burket v. Angelone*, 208 F. 3d 172, 192 (4th Cir. 2000); *Hastings v. Yukins,* 194 F. Supp. 2d at 671-72.   Mental illness in and of itself does not equate with the incompetency to stand trial. *See United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir.1996); *See also Mackey*, 217 F.3d at 410-14 (upholding determination that habeas petitioner was competent despite an earlier diagnosis of schizophrenia and an affidavit from the defendant's lawyer stating that his client "exhibit[ed] great difficulty in communicating and assisting with his defense."). Depression in and of itself also does not establish a criminal defendant's mental incompetency. *See e.g., Nowak v. Yukins*, 46 F. App'x. 257, 259 (6th Cir. 2002)(habeas petitioner failed to show that her depression amounted to mental incompetence that would justify tolling limitations

period for filing habeas petition). The mere fact that a defendant has been prescribed psychotropic drugs also does not automatically establish that the defendant was not mentally competent. *See Otte v. Houk*, 654 F.3d 594, 600-01 (6th Cir. 2011).

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

A defendant is not prejudiced by counsel's failure to seek a competency examination, absent an actual basis to support a claim of incompetency at the time of the proceeding. *See Bair v. Phillips*, 106 F. Supp. 2d 934, 941 (E.D. Mich. 2000). Petitioner has presented no evidence that he was unable to understand the proceedings against him or assist his attorney at trial or at sentencing. Because petitioner has failed to establish that he was incompetent at the time of his trial or sentencing, counsel would not have been ineffective for failing to seek a competency evaluation of petitioner. Petitioner is not entitled to relief on his fourth or eighth claims.

### E.  Claim # 5.  Cumulative error.

Petitioner contends that he is entitled to habeas relief because of cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Petitioner is not entitled to habeas relief based on cumulative error. *Id.*

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).  The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V.  <u>ORDER</u>

Based upon the foregoing, **IT IS ORDERED** that:

   (1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

   (2) A certificate of appealability is **DENIED.**  Petitioner will be **DENIED** leave
       to appeal *in forma pauperis*.

<div style="margin-left:40%">

<u>s/Sean F. Cox</u>                
Sean F. Cox
United States District Judge

</div>

Dated:  October 13, 2021